# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

SHARON R. COMPISE, )
)
        Plaintiff, )
)
v. )   No. CIV-22-489-JD
)   Civil Rights Action
)
DAVID B. HOOTEN, individually and in his )   JURY TRIAL DEMANDED
    official capacity as Oklahoma County Clerk, )
)
        Defendants. )

## AMENDED COMPLAINT

**COMES NOW THE PLAINTIFF**, and for her cause of action herein alleges and states as follows:

## PARTIES

1. The Plaintiff is Sharon R. Compise, an adult female resident of Logan, County.

2. The Defendants are David B. Hooten, individually and in his official capacity as the elected Oklahoma County Clerk,

## JURISDICTION AND VENUE

3. This is a cause of action for injury to Plaintiff's Fourteenth Amendment right to be free of gender discrimination and sexual harassment by a government actor which injury is made actionable by 42 U.S.C. § 1983. Jurisdiction is vested over such action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).

4. Defendants may be found and sued in Oklahoma County and all of the actions at issue occurred in Oklahoma County. Oklahoma County is located within the Western District of the United States District Courts of Oklahoma such that venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

5. David B. Hooten is the elected Oklahoma County Clerk and as such is the final policymaker and decisionmaker regarding the hiring, firing and work conditions for persons within the Oklahoma County Clerk's office. To Plaintiff's observation, Mr. Hooten exercised unchecked control over his subordinate employees to the point that when he engaged in apparently unlawful age and sex discrimination for which the County was required to pay compensation, there were neither restraints or limitations or his conduct nor any effective review or corrective action taken by any County officials.

6. Because of his position as the official decisionmaker/policymaker regarding employment issues, Mr. Hooten in his official capacity is the alter ego of Oklahoma County for the treatment of the Plaintiff and Oklahoma County is liable for all of his actions.

7. All of the actions herein were taken by Defendant Hooten acting under the color of and by misuse of his governmental authority vested in him by his elected position.

8. Mrs. Compise was at all relevant times a deputy clerk working in the office of and under the supervision of Defendant Hooten.

9. Starting in 2017 Defendant Hooten began attempting to cultivate a personal relationship with the Plaintiff. He requested to go with her when she would go walking in the underground concourse during her lunch hours. Mrs. Compise initially agreed to this, but became increasingly uncomfortable with his conduct due to his demeanor, including his tone of voice, body language and the tone and tenor of speaking which were indicative of a sexual attraction. Mr. Hooten's conduct became more invasive and disturbing by actions such as having Plaintiff download on her phone a personal app which he said would allow him to keep track of where she was. Plaintiff downloaded the app in Hooten's presence and then deleted it soon after she was out of his presence. Hooten appeared to stalk the Plaintiff by

watching on cameras to determine where the Plaintiff was going. Other employees commented on Hooten's personal attention to the Plaintiff, stated that he "liked" her, which also caused Hooten's conduct to be more offensive to her. Plaintiff started avoiding Mr. Hooten and finding excuses to not allow Hooten to walk with her. To Plaintif's observation, Hooten did not engage in similar conduct with any male employees.

10. In 2017, Mr. Hooten also started complimenting Mrs. Compise on her physical appearance and manner of dress in a manner that went beyond causal compliments and were personal. These comments on her appearance took place at least several times a week to the point of making Mrs. Compise uncomfortable. To Plaintiff's observation, Hooten did not engage in similar conduct with any male employees.

11. As some point prior to the COVID pandemic, Mrs. Compise became aware that Mr. Hooten had apparently purchased or assisted in purchasing a vehicle for a female employee and then sexually propositioned that employee on the way back from the dealership to the office. That this conduct was generally known and yet there were no repercussions, corrective or preventative action taken towards Mr. Hooten added to the sexually hostile and intimidating nature of Plaintiff's environment.

12. Following the report about Hooten's sexual conduct with another employee and the believed settlement of a sexual harassment claim, Hooten temporarily stopped his conduct of tracking the Plaintiff and making comments on her appearance. This also, however, largely coincided with the decision to have the Plaintiff and other staff work from home during the pandemic.

13. When Plaintiff returned to the workplace with other staff, it appeared that Mr. Hooten was having an inappropriate relationship with another female employee. This was commonly known and Plaintiff herself walked in on a situation that seemed to be an

3

inappropriately personal relationship between Hooten and the other employee. That no corrective, remedial or preventative actions were being taken added to the sexually hostile and intimidating work environment.

14. Mr. Hooten also started to again compliment Mrs. Compise on her personal appearance and started dropping into her office more frequently demonstrating unwanted, unprofessional personal interest on the part of Mr. Hooten towards the Plaintiff. To Plaintiff's observation, Hooten did not engage in similar conduct with any male employees.

15. On April 26, 2022, Mr. Hooten issued a mandatory directive for the Plaintiff, and two other females (one of whom was rumored to have a relationship with Mr. Hooten) to go on a "team building" exercise. This directive required the Plaintiff and these females– but no males-- to meet Mr. Hooten at 11:00 a.m. the following day. Mr. Hooten stated that there would be drinking and gambling and that these females (including Plaintiff) would have to store their jewelry and phones. Hooten stated that the females would not be allowed to drive themselves to the undisclosed "team building" location, thus making them isolated and unable to leave or call for assistance. Hooten also stated that Plaintiff and the two other women might have to sign a waiver for their activities. Hooten claimed he had been genetically altered so that he would not get drunk with the implication being that the women would be intoxicated or impaired and vulnerable to him. This bizarre conversation was severely intimidating and objectively threatening and placed the Plaintiff in imminent fear of being drugged and sexually assaulted if she obeyed Hooten's directive.

16. Plaintiff refused to appear for the supposed "training exercise" and instead reported this sexual misconduct.

17. After she reported such misconduct, Defendant Hooten started walking back in forth in front of Plaintiff's office in an attempt to intimidate her. Plaintiff reported this

retaliatory and harassing conduct and was placed on administrative leave with pay due to her fear of returning to her work place. No similar conduct was directed toward male employees.

18. As the direct result of the conduct of Hooten acting personally and under the color of his office, and treating the Plaintiff in a manner that was both adverse and different to how male employees were treated, Plaintiff has suffered severe anxiety and distress for which she is entitled to compensation.

19. Because the conduct of Hooten was in wilful, malicious and intentional disregard of Mrs. Compise's clearly established rights, an award of punitive damages should also be assessed against Hooten in his individual capacity.

## **PRAYER**

**WHEREFORE THE PLAINTIFF** and prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and award compensatory damages, attorney's fees and costs against both Defendants and punitive damages against Defendant Hooten. Plaintiff further prays that she be awarded any appropriate equitable relief, pre- and postjudgment interest, costs and attorney's fees.

**RESPECTFULLY SUBMITTED THIS 22nd DAY OF JULY, 2022**.

Hammons, Hurst & Associates

s/ Mark Hammons
Mark Hammons, OBA No. 3784
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: taylor@hammonslaw.com
Jury trial demanded
Attorney Lien claimed

**CERTIFICATE OF SERVICE**

      A true copy of the foregoing was filed and served by use of this Court's ECF system of filing and service to the opposing counsel below listed on this 22nd day of July, 2022.

Carrie A. Remillard, OBA No. 21,539
Assistant District Attorney
320 Robert S. Kerr, Suite 505
Oklahoma City, Oklahoma 73102
Telephone: (405) 713-1600
Facsimile: (405) 713-1749
Email: carri.remillard@oklahomacounty.org

                                          s/ Mark Hammons