IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

SHARON R. COMPISE,            )
                              )
                 Plaintiff,   )
                              )
vs.                           )        CIV-22-489-JD
                              )
THE BOARD OF COMMISSIONERS    )
OF OKLAHOMA COUNTY, a county  )
government, and DAVID B. HOOTEN, )
individually and in his official capacity )
as Oklahoma County Clerk,     )
                              )
                 Defendants.  )

---

## MOTION TO DISMISS AMENDED COMPLAINT ON BEHALF OF OKLAHOMA COUNTY BY AND THROUGH DAVID B. HOOTEN IN HIS OFFICIAL CAPACITY

---

CARRI A. REMILLARD, OBA # 21539
Assistant District Attorney
Oklahoma County District Attorney's Office
320 Robert S. Kerr, Suite 505
Oklahoma City, OK 73102
(405) 713-1600 Phone
(405) 713-1749 Fax
carri.remillard@oklahomacounty.org

**Attorney for Defendant Oklahoma County**

## TABLE OF CONTENTS

INTRODUCTION .        .        .        .        .        .        .        .        .        1

FACTS AS ALLEGED IN THE AMENDED COMPLAINT        .        .        3

ARGUMENTS AND AUTHORITIES .        .        .        .        .        .        5


I.        THE AMENDED COMPLAINT DOES NOT SATISFY THE
        *TWOMBLY* AND *IQBAL* PLEADING STANDARDS TO
        SURVIVE DISMISSAL.        .        .        .        .        .        .        5

II.        THE AMENDED COMPLAINT FAILS TO STATE A
        PLAUSIBLE EQUAL PROTECTION CLAIM UNDER
        SECTION 1983.        .        .        .        .        .        .        .        6

        A. The Factual Allegations Do Not Rise to the Level of a
           Constitutional Violation.        .        .        .        .        .        7

           1.  Gender Discrimination        .        .        .        .        .        8

           2.  Sexually Hostile Work Environment        .        .        .        12

III.        THE AMENDED COMPLAINT FAILS TO ESTABLISH
        MUNICIPAL LIABILITY.        .        .        .        .        .        .        15

        A. Oklahoma County Cannot Be Held Vicariously Liable.        15

        B.  The Amended Complaint Fails to Allege an Official
            Policy or Custom of Oklahoma County        .        .        .        16

        C. Hooten Was Not a Final Policymaker for Oklahoma
           County on Personnel Policies.        .        .        .        .        18

CONCLUSION        .        .        .        .        .        .        .        .        24

CERTIFICATE OF DELIVERY .        .        .        .        .        .        25

i

## TABLE OF AUTHORITIES

### Case Law

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................ 5, 16

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*
520 U.S. 397 (1997)............................................................16

*Brammer-Hoelter v. Twin Peaks Charter Academy*
602 F.3d 1175, 1188 (10th Cir. 2010) ..................................... .21

*Brown v. Montoya,*
662 F.3d 1152 (10th Cir. 2011) ...............................................10

*Carney v. City & Cnty of Denver,*
534 F.3d 1269 (10th Cir. 2008)........................................ 16, 17

*City of Cleburne, Tex. V. Cleburne Living Ctr.,*
473 U.S. 432 (1985)................................................................ 7

*City of St. Louis v. Praprotnik,*
485 U.S. 112 (1998). ....................................................20, 21, 22

*Collins v. City of Harker Heights,*
503 U.S. 115 (1992). ...............................................................8

*Drake v. City of Fort Collins,*
927 F.2d 1156 (10th Cir. 1991)................................................ 8

*E.E.O.C. v. Flasher Co.,*
986 F.2d 1312 (10th Cir. 1992)................................................ 9

*Engquist v. Oregon Dept. Of Ag.,*
553 U.S. 591 (2008)................................................................8

*Escue v. Northern Oklahoma College*,
   450 F.3d 1146 (10th Cir. 2006)……………………………………………13

*Hafer v. Melo*,
   502 U.S. 21 (1991) ………………………………………………… ……..2

*Hicks v. Gates Rubber Co.*,
   833 F.2d 1406 (10th Cir. 1987)……………………………………………13

*Kansas Penn Gaming, LLC v. Collins*,
   656 F.3d 1210 (10th Cir. 2011)……………………………………… …..6

*Khalik v. United Air Lines*,
   671 F.3d 1188 (10th Cir. 2012)……………………………………………6

*Kramer v. Wasatch County Sheriff's Office*,
   743 F.3d 726 (10th Cir. 2014). ………………………………………….. 7

*Lankford v. City of Hobart*,
   73 F.3d 283 (10th Cir. 1996) ………………………………… 7, 15, 16, 19, 23

*Lincoln v. Maketa*,
   880 F.3d 533 (10th Cir. 2018)…………………………………………...11

*McMillian v. Monroe Cnty, Ala.*,
   520 U.S. 781 (1997) …………………………………………………19, 20

*Milligan-Hitt v. Bd. of Trustees of Sheridan Cty. Sch. Dist. No. 2,*
   523 F.3d 1219 (10th Cir. 2008)…………………………………………...7

*Monell v. New York City Dep't of Soc. Serv.*
   437 U.S. 658 (1978) ………………………………………………… ….. 7

*Oklahoma City v. Tuttle*,
   471 U.S. 808 (1985) …………………………………………………18

*Oncale v. Sundowner Offshore Servs., Inc.,*
    523 U.S. 75 (1998)………………………………………………….. 12

*Pembaur v. City of Cincinnati*
    475 U.S. 469 (1986) …………………………………………………16, 19

*Piercy v. Maketa,*
    480 F.3d 1192 (10th Cir. 2007)…………………………………………… 11

*Sherman-Harris-Goldson v. Forrest Park Municipal Auth.,*
    2021 WL 5056582 (W.D. Okla. Nov. 11, 2021)……………………….. 10

*Starrett v. Wadley,*
    876 F.2d 808 (10th Cir. 1989) ......................................... 18, 19, 21, 22, 23

*Steward v. Kendall,*
    2022 WL 49190 (W.D. Okla. Jan. 5, 2022)………………………………9

*Tilghman v. Kirby,*
    2015 WL 5472498 (W.D. Okla. Sept. 16, 2015)
    *aff'd,* 662 F. App'x 598 (10th Cir. 2016)………………………………..13

*Trujillo v. Univ. of Colo. Health Sci. Ctr.,*
    157 F.3d 1211 (10th Cir. 1998)………………………………………….. 9

## Statutes and Rules

Fed. Stat.:

    42 U.S.C. §1983……………………………….. ……………..........5,7, 8, 9 15,20

Fed. R. Civ. P.:
    Rule 12(b)(6) ........................................................................... 5, 6

Okla. Stat.:

    19 O.S. § 339........................................................................22

51 O.S. § 152(7) ...................................................................................... 7, 15

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHARON R. COMPISE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIV-22-489-JD |
| | ) | |
| THE BOARD OF COMMISSIONERS | ) | |
| OF OKLAHOMA COUNTY, a county | ) | |
| government, and DAVID B. HOOTEN, | ) | |
| individually and in his official capacity | ) | |
| as Oklahoma County Clerk, | ) | |
| | ) | |
| Defendants. | ) | |

MOTION TO DISMISS AMENDED COMPLAINT ON BEHALF
OF OKLAHOMA COUNTY BY AND THROUGH
<u>DAVID B. HOOTEN IN HIS OFFICIAL CAPACITY</u>

<u>INTRODUCTION</u>

In her Amended Complaint, Plaintiff Sharon R. Compise ("Compise" or

"Plaintiff") maintains that over the past five years, Defendant David B. Hooten

("Hooten"), the former Oklahoma County Clerk, sexually harassed her,

created a sexually hostile work environment, and discriminated against her

based on her gender, in violation of the Equal Protection Clause of the

Fourteenth Amendment.

1

Plaintiff filed this action on June 14, 2022.  [Doc. No. 1].  In response to Oklahoma County's Motion to Dismiss [Doc. No. 8], Plaintiff filed an Amended Complaint on July 22, 2022.  [Doc. No. 12]. Compise has sued Oklahoma County by and through Oklahoma County Clerk David Hooten, in his official capacity, as the duly elected Oklahoma County Clerk, for violating her constitutional right to equal protection.[1]  [Doc. No. 12 at ¶ 2]. Likewise, she has asserted claims against Hooten in his individual capacity.[2] *Id.*

However, as demonstrated below, Plaintiff cannot show either a constitutional deprivation, nor a municipal policy or custom that was the moving force behind her deprivation.   Therefore, her claims against Oklahoma County by and through Hooten in his official capacity, as the duly elected County Clerk, fail as a matter of law.

---

[1] Suits against a government official in his or her official capacity represent a way of pleading an action against the entity of which the officer is an agent.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[2] While Plaintiff has sued Defendant Hooten in his official and individual capacities, the Motion to Dismiss the Amended Complaint is filed on behalf of Defendant Hooten solely in his official capacity, as the duly elected County Clerk. The undersigned counsel does not represent Defendant Hooten with respect to any individual capacity claims. The Coyle Law Firm is representing Defendant Hooten in his individual capacity and has filed an Answer to the Amended Complaint. [Doc. No. 16].

## FACTS AS ALLEGED IN THE AMENDED COMPLAINT

Plaintiff is currently employed as a deputy clerk in the County Clerk's Office and has been employed in said position during the timeframe set forth in the Amended Complaint. [Doc. 12, at ¶8]. According to the Amended Complaint, starting in 2017, Hooten started to cultivate a "personal relationship" with Compise. *Id.* at ¶ 9.  Specifically, Compise avers that Defendant Hooten requested to go walking with her during lunch hours, that he asked her to download a personal app to her phone so he could keep track of where she was, that he watched her movements on the office's cameras, and that he started complimenting Compise on her physical appearance and manner of dress. *Id.*  at ¶¶ 9-10. While Compise neglects to provide any details about the alleged comments or how often they occurred, she contends that the compliments made her feel uncomfortable. *Id.* at ¶ 10.

During the COVID pandemic, Hooten stopped tracking Plaintiff and stopped complementing Plaintiff on her appearance *Id.* at ¶¶ 11-12. Plaintiff surmises, however, that the conduct stopped because she was working from home during the pandemic.  *Id.* at ¶ 12.

3

After the stay-at-home orders expired, Plaintiff returned to work. On some unspecified date, she allegedly walked in on a situation involving Hooten and another employee, which led her to believe that Hooten had an inappropriate and personal relationship with the employee. *Id.* at ¶ 13. Again, the Amended Complaint is silent on the particulars of what Compise observed or how the interaction was inappropriate.

Sometime after this encounter, Plaintiff contends that Hooten turned his attention back towards her, complimenting her appearance and stopping by her office more frequently. *Id.* ¶14.  Whether the compliments were sexual in nature and objectively offensive is not known because the Amended Complaint offers no assertions (specific or conclusory) that elaborate on Hooten's conduct.

On April 22, 2022, Compise alleges that Hooten arranged for a team building exercise that involved drinking and gambling at an undisclosed location. *Id.* at ¶ 15.  As set forth in the Amended Complaint, Hooten informed Compise that she and two other female employees would not be allowed to drive themselves to the undisclosed location, and that they would have to sign a waiver for their activities. *Id.*  Compise refused to appear for the "team building exercise" and instead reported Hooten's behavior to

Human Resources. *Id.* at ¶ 16.  She was placed on a paid administrative leave while her complaint was investigated.   While Hooten has denied the allegations, he resigned as the Oklahoma County Clerk on June 17, 2022.

However, these allegations, even if accepted as true, are insufficient to establish gender discrimination and sexual harassment in violation of her right to equal protection under 42 U.S.C. § 1983.  Moreover, she cannot establish municipal liability under §1983. Therefore, Hooten's alleged unconstitutional conduct cannot be imputed against Oklahoma County.

<u>ARGUMENTS AND AUTHORITIES</u>

I.    THE AMENDED COMPLAINT DOES NOT SATISFY THE *TWOMBLY AND IQBAL* PLEADING STANDARDS TO SURVIVE DISMISSAL.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead enough facts to state a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). To meet the facially plausible standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."  *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.  A court

is not required to accept as true a "legal conclusion couched as a factual allegation." *Id*.

"The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require a plaintiff establish a *prima facie* case in her complaint, the elements of each claim may help to determine whether the plaintiff has set forth a plausible claim. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

Applying these standards, Plaintiff has failed to state a plausible equal protection claim against Oklahoma County, via Hooten in his official capacity; therefore, the Amended Complaint must be dismissed.

## II.   THE AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE EQUAL PROTECTION CLAIM UNDER SECTION 1983.

Plaintiff's sole federal claim is a Section 1983 equal protection claim predicated on sexual harassment and gender discrimination.   Compise seeks to hold Oklahoma County liable for the alleged sexually hostile work environment created by Hooten and for the adverse and different treatment she received by Hooten in comparison to her male counterparts.   While

6

gender discrimination and sexual harassment by a public official may violate the Fourteenth Amendment right to equal protection and trigger liability under § 1983, a governmental entity cannot be held liable based solely on the existence of an employer-employee relationship with an alleged tortfeasor.[3]  *Milligan-Hitt v. Bd. of Trustees of Sheridan Cty. Sch. Dist. No. 2,* 523 F.3d 1219, 1223(10th Cir. 2008)(citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692-95 (1978)).

Indeed, municipality liability only attaches when the official's actions can be characterized as representing an official policy or custom of the municipality or if the official possessed final policy making authority with respect to the acts in questions.  *Lankford v. City of Hobart,* 73 F.3d 283, 286 (10th Cir. 1996); *Kramer v. Wasatch County Sheriff's Office,* 743 F.3d 726, 758-59 (10th Cir. 2014).

## A.   THE FACTUAL ALLEGATIONS DO NOT RISE TO THE LEVEL OF A CONSTITUTIONAL VIOLATION.

The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. V. Cleburne*

---

[3] Under Oklahoma law, an elected official is an employee of a political subdivision. 51 O.S. § 152(7)(a)(1), (12).

*Living Ctr.,* 473 U.S. 432, 439 (1985). In the public employment context, the Equal Protection Clause "afford[s] protection to employees who serve the government, as well as those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections." *Collins v. City of Harker Heights,* 503 U.S. 115, 119-20 (1992). Specifically, the Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently. *Engquist v. Oregon Dept. Of Ag.*, 553 U.S. 591, 605 (2008).

### 1. Gender Discrimination.

Plaintiff alleges that Hooten treated her in a manner that was both adverse and different than how he treated male employees and that this disparate treatment violated her rights to equal protection. As such, she must satisfy the elements of a Title VII discrimination claim. *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991) ("[T]he elements of a plaintiff's case are the same . . . whether that case is brought under §§ 1981 or 1983 or Title VII."). To establish a *prima facie* case for gender discrimination, Compise must demonstrate that (1) she is a member of a protected class; (2) she suffered some adverse employment action; and (3) similarly situated

8

employees were treated more favorably. *Trujillo v. Univ. of Colo. Health Sci. Ctr.,* 157 F.3d 1211, 1215 (10th Cir. 1998).

In support of her disparate treatment theory, Compise points to a directive Hooten issued to her and two other employees to attend a team building exercise; that Hooten complimented her on her appearance, went walking with her during the lunch hour, that other employees commented on the personal attention and stated that he liked her; and that after she reported the alleged sexual harassment, she was placed on a paid administrative leave due to her fear of returning to her workplace. [Doc. No. 12 at ¶¶15, 17, 18]. Based on her "observations", Hooten did not engage in similar conduct with any males.

However, even accepting these allegations as true, they fail to rise to the level of unlawful discriminatory conduct or a constitutional violation. Neither Title VII nor § 1983 "make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal. Federal law prohibits only intentional discrimination based upon an employee's protected class characteristics." *Steward v. Kendall,* 2022 WL 49190 at *4 (W.D. Okla. Jan. 5, 2022) (quoting *E.E.O.C. v. Flasher Co.,* 986 F.2d 1312, 1319 (10th Cir. 1992)).

The facts alleged do not show that an otherwise similarly situated person was treated differently than she was. *Sherman-Harris-Goldson v. Forrest Park Municipal Auth.,* 2021 WL 5056582 *6 (W.D. Okla. Nov. 11, 2021) (quoting *Brown v. Montoya,* 662 F.3d 1152, 1173 (10th Cir. 2011) (dismissing plaintiff's equal protection claims because she failed to plead facts about any particular person or persons who were treated differently from her)).

The fact that Plaintiff and two other employees were directed to attend a team building event, but no males, does not provide a basis permitting this Court to infer that Plaintiff was treated differently *because of her sex.* Likewise, the allegation that Hooten complimented Compise in a manner that she describes as "beyond causal compliments and were personal" does not allow this Court to infer she was treated differently *because of her sex.*

The treatment of similarly situated employees is inherent to an equal protection claim. Therefore, to plausibly demonstrate that she was treated differently because of her sex, some facts comparing the relevant employment circumstances between Plaintiff and her male counterparts are essential. Without some basic facts, it is impossible to infer that Compise was treated unequally and that the unequal treatment was because of her sex.

10

Finally, the gender discrimination claim cannot proceed because the Amended Complaint fails to allege any adverse employment action.  First, Compise has not been terminated, disciplined, or suffered any tangible employment action.  Second, while she avows that she was placed on a paid administrative leave after she reported the "unconstitutional" conduct, this does not establish any adverse employment action.  *See Lincoln v. Maketa,* 880 F.3d 533 (10th Cir. 2018) (refusing to regard placement on paid administrative leave as a clearly established adverse employment action).  Even more devasting to the plausibility, Compise affirmatively states that she was placed on paid administrative leave because <u>she feared returning to her workplace</u>. [Doc. 12 at ¶ 17].  The Amended Complaint does not allege that Hooten or anyone in the County forced her to take a paid leave of absence.  Rather, Compise was placed on **<u>paid</u>** leave as an accommodation in response "to her fear of returning to her workplace," not a significant change in her employment status or benefits because of her sex. *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007). Even if Compise viewed this accommodation negatively, it is not enough to render the paid leave as an adverse action. Moreover, there are no facts alleged to plausibly infer that the paid admin leave was the result of improper gender discrimination.

11

Therefore, the fact that she was placed on paid leave does not rise to the level of an adverse-employment action. As such, any equal protection claim for gender discrimination cannot proceed.

2. **Sexually Hostile Work Environment**.

The law does not prohibit all verbal or physical harassment. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).  Likewise, the fact that the employee being harassed is female does not, however, mean that the harassment was sexual in nature. *Id.* Indeed, workplace harassment is not "automatically discriminatory based upon sex merely because the words used have sexual content or connotations.". *Id.*

Furthermore, the law requires that a plaintiff demonstrate more than a few isolated incidents of sexual enmity.  The United States Supreme Court has long held that Title VII is not "a general civility code for the American workplace." *Id.*  The law does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. *Id.*  Rather, the law forbids only a steady barrage of opprobrious sexual comment. *Id.*  In other words, to be actionable, the work environment must be "so heavily polluted with discrimination as to

12

destroy the emotional and psychological stability of the minority employee. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1412-13 (10th Cir. 1987).

An equal protection claim predicated on a hostile work environment under § 1983 shares the same requirement to prove a sexually hostile work environment as mandated under Title VII; however, an employee wishing to maintain an equal protection claim predicated on sexual harassment has an additional and higher burden than what is required by Title VII — i.e., she must also establish a discriminatory intent or purpose.   *See Tilghman v. Kirby*, No. CIV-13-73-D, 2015 WL 5472498, at *5 (W.D. Okla. Sept. 16, 2015), *aff'd,* 662 F. App'x 598 (10th Cir. 2016).

To establish an equal protection claim based on sexual harassment, Compise must demonstrate that Hooten's conduct was based on her sex and was sufficiently severe or pervasive as to interfere unreasonably with her work performance and created a hostile or abusive work environment. *See Escue v. Northern Oklahoma College*, 450 F.3d 1146, 1157 (10th Cir. 2006).

Here, the Amended Complaint is devoid of any facts to establish that she was subjected to a sexually hostile work environment under the lesser Title VII standards.  Indeed, notably absent from the Amended Complaint are factual assertions to allow this Court to infer that she was sexually

harassed or subjected to a hostile work environment.  The Amended Complaint fails to describe any of the purportedly offending comments, the frequency of the discriminatory conduct, the severity of the conduct, whether the comments were threatening and humiliating or merely offensive, and whether it unreasonably interfered with Plaintiff's work performance.  While at the motion to dismiss stage, Compise is not obligated to provide detailed factual allegations, the facts alleged must be enough to raise a right to relief above the speculative level. Compise's Amended Complaint falls short of stating sufficient facts that she was subjected to a hostile work environment.

All that Plaintiff offers is that Hooten complimented her on physical appearance and manner of dress and that Hooten informed Plaintiff and two other female employees that he was going to take them on "team building" exercise, which involved drinking and gambling.  While drinking and gambling is certainly not an approved county activity, nor a professional way to deal with workplace issues, the facts as alleged fail to support a sufficiently severe or pervasive work environment that would even violate Title VII.  Therefore, the alleged conduct necessarily cannot rise to the level of a violation of the Equal Protection Clause.

Because the Amended Complaint fails to demonstrate a constitutional violation, any municipality claim fails.

## III.   THE AMENDED COMPLAINT FAILS TO ESTABLISH MUNICIPAL LIABILITY.

To hold Oklahoma County liable for the acts of Hooten in his official capacity, Compise must allege (i) that Hooten committed an underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the policy or custom, and the injury alleged. *Lankford v. City of Hobart,* 73 F.3d 283 (10th Cir. 1996).

### A. Oklahoma County Cannot Be Held Vicariously Liable.

Both the United States Supreme Court and Tenth Circuit have made clear that Section 1983 "rejects the tort principle of *respondeat superior* and does not subject municipalities to vicarious liability for the acts of their employees[4]; municipal taxpayers are liable only for the municipality's own misdeeds." *Id.*   Rather, it is only when the execution of the government's policy or custom inflicts the injury that the governmental entity may be held liable under Section 1983. *See Bd. of Comm'rs, Bryan County, Oklahoma v. Brown,* 520 U.S. 397,403 (1997); *Ashcroft v. Iqbal*, 556 U.S. 662, 676, (2009).

---

[4] As previously stated, an elected official is an employee of a political subdivision. 51 O.S. § 152(7)(a)(1), (12).

As discussed in Proposition II, the alleged conduct fails to demonstrate a violation of Compise's constitutional rights, and therefore, her Amended Complaint should be dismissed on this basis alone. Nonetheless, even assuming *arguendo* that the Amended Complaint demonstrates a constitutional violation, Oklahoma County can only be held liable for the acts of Hooten in his official capacity, if (1) Hooten's unconstitutional actions were representative of an official policy or custom of Oklahoma County; or (2) if Hooten had final policy making authority over personnel issues and exercised his authority in an intentionally discriminatory manner. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986) (plurality); *Lankford,* 73 F.3d at, 286.

B. **The Amended Complaint Fails to Allege an Official Policy or Custom of Oklahoma County.**

Institutional liability may be implicated if the constitutional violation can be characterized as official or unofficial custom or policy of the municipality. "An unconstitutional deprivation is caused by a municipal policy if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself." *Carney v. City & County of Denver,* 534 F.3d 1269, 1274 (10th Cir. 2008). The Amended

Complaint does not allege that Oklahoma County has a policy favoring sexual discrimination and sexual harassment.  In fact, there is no way that Compise could demonstrate such a policy exists because Oklahoma County has a written policy that expressly forbids discrimination and harassment. Without an allegation of a specific policy in place to discriminate against employees based upon sex, Compise must plead facts sufficient to show a "custom" of the same. *Id.*  To meet this burden in public employment matters, "plaintiffs most commonly offer [facts and later] evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Id.*

In an effort to demonstrate a custom of discrimination in the County Clerk's office, Compise alleges that "[t]o Plaintiff's observation, Mr. Hooten exercised unchecked control over his subordinate employees to the point that when he engaged in apparently unlawful age and sex discrimination for which the County was required to pay compensation, there were neither restraints or limitations o[n] his conduct nor any effective review or correction action taken by any County officials." [Doc. 12 at ¶ 5]. However, even accepting as true that the County paid money to a former employee because of discriminatory conduct by Hooten, this is insufficient to create a

17

reasonable inference of a widespread and persistent custom of discriminatory employment practices. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 821 (1985). At most, it suggests an isolated incident. However, the Tenth Circuit has long held that random acts and isolated incidents are insufficient to establish a municipal custom. *See Starrett v. Wadley,* 876 F.2d 808, 820 (10th Cir. 1989) ("isolated and sporadic acts of sexual harassment directed at a few specific female members of the staff does not amount to a persistent and widespread practice"); *see also Lankford.*

Because Compise fails to allege sufficient facts to plausibly state the existence of a longstanding policy or custom favoring sexual harassment and discrimination, her municipality claim against Oklahoma County fails as a matter of law.

### C. Hooten Was Not a Final Policymaker for Oklahoma County on Personnel Policies.

Compise avers that Oklahoma County is liable for Hooten's conduct because he is "the official decisionmaker/policymaker regarding employment issues in his office and is the alter ego of Oklahoma County for the treatment of Plaintiff." *Id.* at ¶ 6.

While conduct by an elected official with final policy-making authority may give rise to municipal liability, the U.S. Supreme Court "hasten[ed] to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Pembauer v. City of Cincinnati,* 475 U.S. 469, 481 (1986).

The question, then, is whether former County Clerk Hooten had final policymaking authority to make County employment policies. In a wholly conclusory statement, Plaintiff contends Hooten is "the final policymaker and decisionmaker regarding the hiring, firing and work conditions for persons within the Oklahoma County Clerk's office." [Doc. 12 at ¶ 5].  However, the exercise of discretionary authority to hire and fire employees who work in his office does not show he was authorized to establish final employment policy for the County, nor does it translate to final policymaking authority for sexual harassment by a supervisor in his office.

The decision of the United States Supreme Court in *McMillian v. Monroe County, Alabama*, 520 U.S. 781 (1997) is instructive on this point.  In that case, the plaintiff had his murder conviction overturned on the grounds that exculpatory evidence was suppressed.  *Id.* at 783.  Among others, he sued the County Sheriff for violating his constitutional rights claiming he had

intimidated witnesses and suppressed the favorable evidence. *Id.* At issue was whether the Sheriff was a policymaker for the County or the State when acting in his capacity as a law enforcement officer. *Id.* at 783-84.

The Court began by noting that "the question is not whether Sheriff Tate acts for Alabama or Monroe County in some categorical, "all or nothing" manner. Our cases on the liability of local governments under § 1983 instruct us to ask whether government officials are final policymakers for the local government in a particular area, or on a particular issue." *Id.* at 785. "Thus, we are not seeking to make a characterization of Alabama sheriffs that will hold true for every type of official action they engage in. We simply ask whether Sheriff Tate represents the State or the county when he acts in a law enforcement capacity." *Id.* at 785-86.

Whether a government officer is a final policy-making official is a question of state law, "and is not a question of fact in the usual sense. *Praprotnik*, 485 U.S. at 124 (explaining a municipality is liable only for acts which it has officially sanctioned or ordered and that a final policymaking official may subject the municipality to liability by his actions, but "the challenged action must have been taken [under] a policy adopted by the

official ... responsible ... for making policy in that area of the [municipality's] business" (citation omitted)).

This question focuses on who is "legally a final policymaker for a municipality" by considering: "(1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decision[s] are final—*i.e.*, are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority."*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010).

While Plaintiff alleges that Defendant Hooten was the duly elected County Clerk for Oklahoma County and that he was the final policymaker regarding hiring, firing, and work conditions in his office [Doc. No. 1, at ¶5], the Amended Complaint is devoid of any factual allegations to infer that Hooten possessed final decision-making authority regarding the County's anti-discrimination and harassment policies, practices, and procedures, which is fatal to Plaintiff's equal protection claim against Oklahoma County. *Starrett v. Wadley,* 876 F.2d 808 (10th Cir. 1989).

In fact, under Oklahoma law, the board of county commissioners have the power "[t]o develop personnel policies for the county with the approval

of a majority of all county elected officers, as evidenced in the minutes to a meeting of the board of county commissioners or the county budget board." *See* 19 O.S.§ 339(A)(10). As such, Hooten's discretionary decisions are constrained by Oklahoma County's anti-discrimination policies, and the fact he may have departed from them, are not the act of Oklahoma County. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 124 (1998). Indeed, the Tenth Circuit's decision in *Starrett,* illustrates this principle perfectly.

In *Starrett* the plaintiff, Rose Marie Starrett, was terminated by Robert Wadley, the county assessor, after she complained of his unwanted sexual advances, inappropriate physical contact, and obscene gestures. *Starrett,* 876 F.2d at 811. Ms. Starrett sued both Creek County and Wadley, *inter alia,* for violating her constitutional rights to equal protection. *Id.* at 812. After a jury returned a verdict in favor of Ms. Starrett on her § 1983 claim, the county appealed. *Id.* at 813.

The Tenth Circuit held the plaintiff's termination by Wadley was a final policy decision attributed to Creek County. However, the Court held that Wadley's "acts of sexual harassment were personal in nature without any indicia of being officially sanctioned or ordered." *Id.* at 819-20. Therefore, the county was not responsible for the assessor's acts under § 1983 because

"isolated and sporadic acts of sexual harassment directed at a few specific female members of his staff" did not amount to a county custom." *Id.* at 820.

Like the plaintiff in *Starrett,* Compise's allegations fail to articulate any cognizable equal protection claim against Oklahoma County.  At most, the alleged sexual harassment by Hooten illustrates a personal, rather than public acts of sexual harassment.  Plaintiff offers no facts to suggest Hooten materially changed her employment duties or status because of his alleged harassment. The fact that Hooten had the ability to hire or fire the employees in his office is irrelevant to Plaintiff's equal protection claim because she has not alleged that she was wrongfully terminated or that keeping her job was contingent on acquiescing to Hooten's purported sexual advances. *Lankford,* 73 F.3d at 287.  At bottom, the factual allegations fail to represent anything that amounted to an official policy or custom of Oklahoma County.  Therefore, because the specific acts alleged in the Amended Complaint does not rise to the level of a policy or custom of Oklahoma County, the equal protection claims against Hooten in his official capacity fail as a matter of law.

<u>CONCLUSION</u>

WHEREFORE, Oklahoma County by and through David Hooten, in his official capacity, respectfully pray that this Honorable Court will grant this Motion to Dismiss in all respects.

Respectfully Submitted,


DAVID W. PRATER
DISTRICT ATTORNEY

/s/  Carri A. Remillard
Carri A. Remillard (OBA 21,539)
Assistant District Attorney
320 Robert S. Kerr, Suite 505
Oklahoma City, OK  73102
Telephone: (405) 713-1600
Facsimile: (405) 713-1749
carri.remillard@oklahomacounty.org

ATTORNEY  FOR  DEFENDANT  OKLAHOMA COUNTY

24

## CERTIFICATE OF DELIVERY

I hereby certify that on this August 5, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Mark Hammons
Hammons, Hurst & Associates.
*Attorney for Plaintiff*

John W. Coyle, IV
*Attorney for Defendant*
*David Hooten, in his*
*Individual capacity*

/s/ *Carri A. Remillard*

25