IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

SHARON R. COMPISE, )
)
                Plaintiff, )
)
v. ) No. CIV-22-489-JD
)
)
DAVID B. HOOTEN, individually and in his )
    official capacity as Oklahoma County Clerk, )
)
                Defendants. )

**PLAINTIFF'S RESPONSE TO OKLAHOMA COUNTY'S MOTION TO DISMISS**

**COMES NOW THE PLAINTIFF** and in response to the County's motion to dismiss shows this Court as follows:

### I. - PRE-RESPONSE CONFERENCE

On or about July 13, 2022, this Court directed that the parties have a conference prior to the Plaintiff's filing either a response to the motion to dismiss or an amended complaint. See Dkt # 9. The Plaintiff advised this Court of the results of such conference on July 22, 2022. Dkt # 11. Plaintiff thereupon filed an amended complaint. Dkt # 12. In consideration of the amended complaint, the Court overruled the motion to dismiss. Dkt # 14.

Defendant has now filed a renewed motion to dismiss which is the subject of this response. Dkt #17. It should be noted that the County's motion is filed under an incorrect caption as the Plaintiff, at the insistence of the County, deleted reference to the Board of Commissioners and proceeded against the County by naming Hooten in his official capacity.

### II. - MATTERS PERTAINING TO DAVID HOOTEN

David Hooten, individually, has been served and has filed an answer to the Complaint. No part of the County is addressed to Mr. Hooten's individual liability.

### III. - THE STANDARD FOR A MOTION TO DISMISS

Defendant somewhat overstates the pleading requirements to set out a plausible claim. As explained in ***Erickson v. Pardus,*** 551 U.S. 89, 93-94 (2007) (other internal citations

-1-

omitted):

> Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."' **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 555 (2007) (quoting **Conley v. Gibson**, 355 U.S. 41, 47 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. **Bell Atlantic Corp., supra**, at 555-556. . .

It continues to be true, that "[t]he court must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed." **Ruiz v. McDonnell**, 299 F.3d 1173, 1181 (10th Cir. 2002) (quoted in **Archuleta v. Wagner**, 523 F.3d 1278, 1283 (10th Cir. 2008)).

In **Erickson v. Pardus,** 551 U.S. 89, 93-94 (2007) (other internal citations omitted) the Supreme Court elaborated further on the pleading standard:

> . . . [A]llegations suffice [if they] 'raise a reasonable expectation that discovery will reveal evidence' satisfying the materiality requirement, **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 556 (2007), and . . . 'allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' **Iqbal**, 556 U.S. 662, at 663.

The Tenth Circuit has explained that:

> [The court's] task is not to assess whether the claim is probable but whether the 'factual allegations in [the] complaint [are] enough to raise a right to relief above the speculative level.' **Kay v. Bemis**, 500 F.3d 1214, 1218 (10th Cir. 2007) (citation, brackets, and internal quotation marks omitted). In particular, it is not necessary 'that the inference of . . . intent supported by the pleaded facts be *the most plausible explanation* of the defendant's conduct. It is sufficient if the inference of . . . intent is plausible.' **Doe v. Columbia Univ**., 831 F.3d 46, 57 (2d Cir. 2016) (alleging discriminatory intent); **see Starr v. Baca**, 652 F.3d 1202, 1216 (9th Cir. 2011) ('If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint [alleging deliberate indifference] survives a motion to dismiss under Rule 12(b)(6).').

**Rupp v. Pearson**, 658 F. App'x 446, 449 (10th Cir. 2016) (emphasis by the Court).

With these standards in mind, Plaintiff will address Defendant's specific arguments.

### III. - SEXUAL HARASSMENT

Defendant County's Prop's I & II(A), p. 7-14, assert that Plaintiff's facts are not sufficient to establish a constitutional claim of denial of equal protection based on sex.

As Defendant now concedes in its renewed motion, "the elements of a plaintiff's case are the same. . . whether that case is brought under [§] 1983 or Title VII." ***Drake v. City of Fort Collins***, 927 F.2d 1156, 1162 (10th Cir. 1991) (quoted by Defendant in its motion, p. 8).

Defendant, however, errs by claiming that a § 1983 sexual *harassment* claim requires that "similarly situated employees were treated more favorably". Def's Mt, p. 8-9.[1] This standard is from discrimination cases, not sexual harassment cases.

Undoubtedly a sexual harassment claim is actionable under § 1983. "Sexual harassment [by a public official or employee] can violate the Fourteenth Amendment right to equal protection of the laws thus triggering a § 1983 cause of action." ***Maestas v. Lujan***, 351 F.3d 1001, 1009 (10th Cir., 2003) (quoting ***Lankford v. City of Hobart***, 73 F.3d 283, 286 (10th Cir. 1996), alteration by the Court). ***Accord Starrett v. Wadley***, 876 F.2d 808, 814 (10th Cir. 1989); ***Woodward v. Worland***, 977 F.2d 1392, 1398 (10th Cir. 1992); ***Murrell v. School Dist. No. 1***, 186 F.3d 1238, 1251 (10th Cir. 1999) and ***Nieto v. Kapoor***, 268 F.3d 1208, 1217-1218 (10th Cir. 2001), inter alia.

A § 1983 claim for sexual harassment is determined by Title VII standards, rather than by an enhanced standard of liability.[2] ***SH.A v. Tucumcari Mun. Schs***, 321 F.3d 1285, 1288-89 (10th Cir. 2003):

> [In ***Johnson v. Martin***, 195 F.3d 1208 (10th Cir.1999), we] disagreed with the defendants' assertion that cases involving harassment in the employment context could not provide the required clearly established law with respect to a claim by a nonemployee. . .

***See also Nieto v. Kapoor, supra*** (using Title VII precedent to determine a § 1983 claim for

---

[1] Nonetheless, the Amended Complaint, Dkt # 12, set out that Hooten's treatment of the female Plaintiff was different from his treatment of males. ***Id.***, ¶¶ 9, 10, 14, 15.

[2] Defendant relies on ***Tilghman v. Kirby***, 2015 U.S. Dist. LEXIS 123456 (W.D. Okla., Sept. 16, 2015) as holding that a § 1983 sexual harassment claim requires more proof than a Title VII claim. Although that was mentioned in dicta, respectfully that statement is contrary to the controlling case law in ***SH.A***. and ***Nieto***. Notably, on appeal the Tenth Circuit did **not** endorse such a proposition. ***Tilghman v. Kirby***, 662 F. App'x 598, 602-03 (10th Cir. 2016).

sexual harassment). This is the general rule. *See Stuart v. Jefferson County Dep't of Human Res.*, 152 Fed. App'x 798, 803 (11th Cir. 2005) ("When section 1983 is used as a parallel remedy for violation of . . . Title VII, the elements of the two causes of action are the same" except that a section 1983 claim may be brought against individuals); *accord Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006); *Wright v. Rolette County*, 417 F.3d 879, 884-85 (8th Cir. 2005); *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994), and *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 896 (1st Cir. 1988).

> Because the issue is sexual harassment, the correct elements are as follows:
>
> A prima facie case of hostile work environment in violation of Title VII requires a plaintiff to show membership in a protected group, unwelcome harassment based on the protected characteristic, and 'due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.' *Harsco Corp. v. Renner,* 475 F.3d 1179, 1186 (10th Cir. 2007) (brackets and internal quotation marks omitted).

*Glapion v. Castro*, 646 F. App'x 668, 671 (10th Cir. 2016).[3]

The first element of the claim is membership in the protected class. Plaintiff has met this element by pleading that she is a female. See Amended Complaint, Dkt # 12, ¶ 1.

The second element is unwelcome harassment due to gender. Plaintiff's Amended Complaint alleges that she was subject to unwelcome harassment at Paragraphs 9-10, 13-15. That this conduct was "because of" Plaintiff's gender is both pled[4] and it is a plausible

---

[3] Of course, under § 1983 the Plaintiff must show that the harassment was by a person acting under color of law. That is pled in the Amended Complaint, §§ 5, 7. Hooten's position as an elected official is sufficient to establish action under the color of law. *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994) and *Johnson v. Martin*, 195 F.3d 1208, 1219-20 (10th Cir.1999).

[4] Amended Complaint, Dkt #12, ¶ 9 wanted to walk with the Plaintiff and that Hooten's "demeanor, including his tone of voice, body language and the tone and tenor. . . were indicative of a sexual attraction." "[D]emeanor is a kind of 'real evidence'", *Colby v. Klune*, 178 F.2d 872, 873, 874 (2d Cir., 1949), apart from spoken words. The Supreme Court has several times observed that "the best evidence [of discriminatory intent] often will be the demeanor of the" alleged discriminator. *Snyder v. Louisiana*, 552 U.S. 472,

inference from both his conduct towards the Plaintiff, Ms. Compise, and his prior sexually harassing conduct towards other females:[5]

> Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex.

***Oncale v. Sundowner Offshore Servs., Inc.***, 523 U.S. 75, 80 (1998).

As stated above, it is not necessary "that the inference of . . . intent supported by the pleaded facts be *the most plausible explanation* of the defendant's conduct. It is sufficient if the inference of . . . intent is plausible." ***Doe v. Columbia Univ.***, 831 F.3d 46, 57 (2d Cir. 2016) (quoted with approval by the Tenth Circuit in ***Rupp***, 658 F. App'x, 449, ***supra***).

The third element is that the harassment was sufficient harassment **or** severe to meet the standard of a hostile environment. It is clear that pervasiveness and severity are *alternative* grounds on which to establish a hostile environment:

> We have stated that '[p]ervasiveness and severity are independent and equal grounds' upon which a plaintiff may establish this element of a hostile environment claim. ***Witt v. Roadway Express***, 136 F.3d 1424, 1432 (10th Cir. 1998) (addressing a hostile environment claim under 42 U.S.C. § 1981); ***see also Aramburu v. Boeing Co.***, 112 F.3d 1398, 1410 (10th Cir. 1997) (citing ***Durham v. Xerox Corp.***, 18 F.3d 836, 838-39 (10th Cir. 1997) for the proposition that 'standards and burdens under § 1981 are the same as those under Title VII'). Nevertheless, those two grounds 'are, to a certain degree inversely related; a sufficiently severe episode may occur as rarely as once . .

---

477 (2008) (quoting ***Hernandez v. New York***, 500 U.S. 352, 365 (1991) (alteration by the Court). It goes almost without saying that repeated comments about a female's appearance are a common part of sexual harassment/hostile environment cases. ***Ammon v. Baron Auto. Grp.***, 270 F. Supp. 2d 1293, 1307 (D. Kan. 2003), ***Maldonado v. Hosp. Alejandro Otero Lopez***, 614 F. Supp. 2d 181 (D.P.R. 2009), and ***Gordon v. S. Bells, Inc.***, 67 F. Supp. 2d 966, 980 (S.D. Ind. 1999), inter alia. Additionally, Plaintiff has alleged that she was aware of other sexual conduct by Mr. Hooten. ***Id.***, ¶¶ 11, 13.

[5] ***Hirase-Doi v. U.S. West Communications, Inc.***, 61 F.3d 777, 782 (10th Cir.1995) ("evidence of general work atmosphere, including evidence of harassment of other women, may be considered in evaluating a [hostile work environment] claim"). Plaintiff pled her awareness of egregious sexual harassment of other females by Hooten. Amended Complaint, Dkt # 12, ¶¶ 11, 13.

. , while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute.' *Cerros v. Steel Techs, Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002).

*Tademy v. Union Pac. Corp.*, 520 F.3d 1149, 1161-1162 (10th Cir. 2008).

Defendant argues that the actions of Hooten were not sufficiently severe to support a finding of severity. That is not the appropriate interpretation nor even the most plausible interpretation of Plaintiff's pleadings.

In arguing that the evidence does not support severity, the County suggests that most of Plaintiff's evidence does not specifically reflect sexual harassment. That, of course, requires ignoring the Plaintiff's testimony about the *manner* of Hooten's conduct and Hooten's demeanor in making his statements. Amended Complaint, Dkt #12, ¶ 9 (quoted above). In any event, the Tenth Circuit in *O'Shea v. Yellow Tech. Servs*., 185 F.3d 1093 (10th Cir. 1999) found that the trial court had erred by concluding that only conduct which is found to be based on gender or sexual animus should be considered in a sexual harassment case. "[C]onduct which is not gender-based may form a part of the context or environment in which the discriminatory conduct is alleged to have occurred, [therefore] such conduct may be relevant to, and should be considered in, evaluating a hostile work environment claim." *Id.*, 185 F.3d, at 1097.

Defendant also seems to suggest that the severity standard requires physical conduct, but that belief has been rejected by the Tenth Circuit. *See Macias v. Sw. Cheese Co., LLC*, 624 Fed.App'x 628, 635 (10th Cir.2015):

> [T]he legal standard for assessing severity does not require physical contact. *See Wright v. Rolette Cty*, 417 F.3d 879, 885 (8th Cir.2005). Rather, we evaluate the totality of the circumstances and note that, even without allegations of physical contact, courts have rejected summary judgment where limited episodes of harassment are extremely serious. *See, e.g., Howley v. Town of Stratford*, 217 F.3d 141, 148-40, 154-55 (2d Cir.200) (reversing summary judgment where plaintiff was subjected to a single 'obscene harangue' followed by other non-physical harassment); *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir.1991) (reversing summary judgment where defendant sent plaintiff two bizarre letters and arranged to be transferred back to her office following a six-month separation). Moreover, 'the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact.' *O'Shea v. Yellow Tech.*

*Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir.1999) (internal quotation marks omitted). . . .

The circumstances described by the Plaintiff would be viewed by a reasonable woman as setting her up for a sexual assault.[6]

> 15. On April 26, 2022, Mr. Hooten issued a mandatory directive for the Plaintiff, and two other females (one of whom was rumored to have a relationship with Mr. Hooten) to go on a "team building" exercise. This directive required the Plaintiff and these females– but no males-- to meet Mr. Hooten at 11:00 a.m. the following day. Mr. Hooten stated that there would be drinking and gambling and that these females (including Plaintiff) would have to store their jewelry and phones. Hooten stated that the females would not be allowed to drive themselves to the undisclosed "team building" location, thus making them isolated and unable to leave or call for assistance. Hooten also stated that Plaintiff and the two other women might have to sign a waiver for their activities. Hooten claimed he had been genetically altered so that he would not get drunk with the implication being that the women would be intoxicated or impaired and vulnerable to him. This bizarre conversation was severely intimidating and objectively threatening and placed the Plaintiff in imminent fear of being drugged and sexually assaulted if she obeyed Hooten's directive.

Of course, this was a *directive* coming from her *supervisor* which inherently makes the event more severe. ***Zisumbo v. McCleodusa Telcoms. Servs***., 154 Fed. Appx. 715, 727 (10th Cir. 2005) ((In assessing whether environment is actionable it is relevant "that the abusive conduct was allegedly undertaken by [the employee]'s direct supervisor"). ***Accord Brooks v. San Mateo***, 229 F.3d 917, 927 n.9 (9th Cir. 2000) and ***Restatement of Torts (Second)*** § 46, comment (e) (The "extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.")

**WHEREFORE,** given that the motion is one for dismissal, this Court must afford Plaintiff the reasonable inference that Hooten's directive was sufficiently outrageous and threatening to, by itself, meet the severity standard for a hostile environment claim.

---

[6] "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" ***Oncale v. Sundowner Offshore Servs. Inc***., 523 U.S. 75, 118 S.Ct. 998, 1003 (1998) (citation omitted).

## IV. - COUNTY LIABILITY

The County argues that it cannot be liable for Hooten's acts of sexual harassment because of the absent of a "custom" or "policy". County's Mt, Prop. III(A),(B), p. 15-18. Rather disingenuously, the Court simultaneously admits that the County can be held liable for Hooten's conduct in areas which he possessed final policymaking authority. *Id*., Prop. III(A), p. 16.

The County then, in Prop. III(C), p. 18-23, argues that Hooten did not have policymaking authority over personnel matters. "[W]hether an official had final policymaking authority is a question of state law." ***Pembaur v. City of Cincinnati***, 475 U.S. 469, 483 (10th Cir.1986). The County concedes this in its Motion, Prop. III(C), p. 20.

The question of whether a county clerk (Hooten's position) is an official decisionmaker for the county in regards to the employment of their subordinates was decided as a matter of state law in ***Wright v. Bd. of Cnty. Comm'rs of Carter Cnty***., 2020 OK CIV APP 46, 475 P.3d 409. "Wright brought [her] lawsuit against [the County] for retaliation and wrongful termination of her employment after she reported criminal conduct by her supervisor, Cynthia Harmon, the County Clerk for Carter County." 2020 OK CIV APP 46, ¶ 2, 475 P.3d, 411. As the Court of Appeals noted:

> Title 19 O.S.2011 § 161(1) defines 'County officer' for purposes of compensation, expenses and related matters as 'the county clerk, county commissioner, county assessor, district court clerk, county treasurer and county sheriff.' Section 162 provides, 'Subject to the approval of the county excise board, every county officer shall appoint such regular and special deputies as are essential to the performance of the duties of office in an efficient manner and shall fix their salaries and compensation.' 19 O.S.2011 § 162.

*Id.*, 2020 OK CIV APP 46, ¶ 32, 475 P.3d, at 418. The Court of Appeals concluded that: "As a county officer, [County Clerk] Harmon is in the category of 'those whose edicts or acts may fairly be said to represent official policy' for Carter County" under 42 U.S.C. § 1983. *Id.*, 2020 OK CIV APP 46, ¶ 33, 475 P.3d, at 418.

Defendant does not address the ***Wright*** decision, however that decision both involves the very position held by Hooten and is, as a holding on state law, generally controlling in

-8-

this court. "While not binding on this court, decisions by a state's intermediate appellate courts provide evidence of how the state's highest court would rule on the issue, and we can consider them as such." *Craven v. Univ. of Colo. Hosp. Auth*., 260 F.3d 1218, 1231 (10th Cir. 2001) (internal quotation omitted). We will not disregard such intermediate rulings "unless [we are] convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).

The County appears to implicitly concede that Hooten has final policymaking authority over hiring and firing of his staff, but suggests that his authority does not extend to "anti-discrimination and harassment policies, practices, and procedures". Def's Mt, Prop. III(C), p. 21. The County claims that the board of county commissioners have the power "[t]o develop personnel policies for the county with the approval of the majority of all elected officers". *Id.*, p. 21-22 (quoting 19 O.S. § 339(A)(10)).

A primary problem is that such "personnel policies" are not before this Court. There is no evidence that such policies have been adopted; no evidence of what the policies are, and no explanation of whether such policies limit Hooten's ability to direct staff to participate in a sexual assault designated "team building." However, even if the existence and terms of such policy were before this Court, that could not be considered in the context of a motion to dismiss. "'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.' *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991)." *Sutton v. Utah State School for the Deaf and Blind, Sutton v. Utah State School for the Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999).

> In reviewing a district court's decision on a motion to dismiss, we 'are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint.' *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).

*Bremer v. Ass'n of Flight Attendants*, 599 Fed. Appx. 844, 845 (10th Cir. 2015).

Defendant's arguments at Prop. III(C), p. 21-22 are simply not proper for

consideration even if those arguments were supported by evidence.

Nor can Defendant rely on ***Starrett v. Wadley***, 876 F.2d 808 (10th Cir. 1989) as creating a blanket exemption from municipal liability for acts of harassment by a decisionmaker. Def's Mt, Prop. III, p. 22-23. To the contrary, ***Starrett*** recognizes that a County may be liable for the constitutional violations of county officers who are vested with final policymaking authority over the action giving rise to the violation. 876 F.2d, at 818-19.

In this regard, the County misreads ***Starrett*** as creating a blanket exclusion from decisionmaker liability for harassment. This is not the case, as in ***Starrett*** the Sheriff's acts of harassment were "private rather than official acts." ***Id.***, at 820. In contrast, Hooten's final, outrageous act of harassment was expressly an "official act" which depended on his control of the terms of employment. No one other than Hooten could direct subordinate employees to participate in an "employment" activity. The analysis in ***Starrett*** makes clear that when an official's harassing action arises from the use of official power, the governmental unit may be held liable:

> . . .Whereas Wadley's ability to hire and fire necessarily carried with it official authority and sanction, the other acts of sexual harassment complained of here were private rather than official acts. *Those acts did not concern any official terms of employment, such as job title or description, salary levels, or other conditions that Wadley could establish only because the County delegated final policy authority over those matters to him.* Rather, Wadley's acts of harassment were personal in nature without any indicia of being 'officially sanctioned or ordered.' ***Pembaur***, 475 U.S. at 480.

***Starrett,*** 876 F.2d, 819-20 (emphasis supplied). Here, Hooten's action "concern[ed]. . . official terms of employment [and] conditions that [Hooten] could establish only because the County delegated final policy authority over those matters to him." ***Id.,*** (paraphrased).

At the least, given the legal authority in ***Wright*** and the Plaintiff's allegations, it is plausible to believe that the evidence will support that Hooten's acts were based on the exercise of final authority sufficient to make the county liable.

Although this is sufficient to defeat the County's motion, ***Starrett*** recognized that County liability could be based on the existence of a custom. ***Id.***, 876 F.2d, at 802. A

custom was not found to exist in Starrett because "[t]here [was] no indication that sexual harassment by others in the office was tolerated or occurred." *Id.* Here, however, the Plaintiff's Complaint recites that:

> 11. At some point prior to the COVID pandemic, Mrs. Compise became aware that Mr. Hooten had apparently purchased or assisted in purchasing a vehicle for a female employee and then sexually propositioned that employee on the way back from the dealership to the office. That this conduct was generally known and yet there were no repercussions, corrective or preventative action taken towards Mr. Hooten added to the sexually hostile and intimidating nature of Plaintiff's environment.

Amended Complaint Dkt # 12, ¶11.

Plaintiff also pled the existence of another inappropriate sexual relationship between Hooten and a female staff member that "was commonly known". *Id.*, ¶ 13. While this might not be sufficient to prove the existence of a "custom", the " allegations suffice [if they] 'raise a reasonable expectation that discovery will reveal evidence'" supporting that claim. ***Matrixx Initiatives, Inc. v. Siracusano***, 563 U.S. 27, 45 n.12, 46 (2011) (quoting ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 556 (2007)).

As Judge Cauthron has explained in ***Harris v. Chevron U.S.A., Inc***., 2015 U.S. Dist. LEXIS 76882, *2-3 (W.D. Okla. June 15, 2015):

> According to Defendants, virtually every allegation in Plaintiff's Complaint asserts it is 'based on information and belief,' thus, it is insufficient to satisfy the requirements for pleading following ***Twombly*** and ***Iqbal.*** . . [T]he Court finds Defendants' argument without merit. Plaintiff's Complaint fairly apprises Defendants of the nature of her claims and raises allegations which, if proven, would establish a right to recover. Her allegations move her claim across the line from merely conceivable to plausible. ***Twombly***, 550 U.S. at 570. Further, as Plaintiff notes, much of the information necessary to add additional factual support to her claims is solely in the control of Defendants. '[T]he complaint . . . give[s] the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.' ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007). . .

**WHEREFORE**, the Plaintiff has adequately set out a plausible basis for finding that the County is liable for Hooten's actions.

## CONCLUSION

The County's motion must be overruled in its entirety.

**RESPECTFULLY SUBMITTED THIS 22ND DAY OF AUGUST, 2022**.

                Hammons, Hurst & Associates

                s/ Mark Hammons
                Mark Hammons, OBA No. 3784
                325 Dean A. McGee Avenue
                Oklahoma City, Oklahoma 73102
                Telephone: (405) 235-6100
                Facsimile: (405) 235-6111
                Email: taylor@hammonslaw.com
                *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

A true copy of the foregoing was filed and served by use of this Court's ECF system of filing and service to the opposing counsel below listed on this 22nd day of August, 2022.

| | |
|---|---|
| Carri A. Remillard, OBA No. 21539<br>Ass't Dist Atty<br>320 Robert S. Kerr, Suite 505<br>Oklahoma City, OK 73102<br>Telephone: (405) 713-1600<br>Facsimile: (405) 713-1749<br>Email: carri.remillard@oklahomacounty.org<br>*Counsel Oklahoma County* | Billy Coyle, OBA No. 20045<br>Coyle Law Firm<br>125 Park Avenue, First Floor<br>Oklahoma City, OK 73102<br>Telephone: (405) 415-4537<br>Facsimile: (405) 415-4535<br>Email: bc@coylelaw.com<br>*Counsel for Hooten individually* |

                s/ Mark Hammons